No. 38,572 and No. 38,573, Consolidated

KATHERYN MARIE GILBERT, *Appellee,* v. MUTUAL BENEFIT HEALTH & ACCIDENT ASSOCIATION, *Appellant.*

GEORGE E. GILBERT, *Appellee,* v. MUTUAL BENEFIT HEALTH & ACCIDENT ASSOCIATION, *Appellant.*

(241 P. 2d 768)

Opinion filed March 8, 1952.

*Charles B. Blackmar,* of Kansas City, Mo., argued the cause, and *Arthur J. Stanley, Arthur J. Stanley, Jr., J. E. Schroeder, Lee E. Weeks,* and *Leonard O. Thomas,* all of Kansas City, and *Henry I. Eager* and *Arthur N. Nystrom,* both of Kansas City, Mo., were with him on the briefs for the appellant.

*John E. Blake,* of Kansas City, argued the cause, and *Robert E. Fabian* and *Bill E. Fabian,* both of Kansas City, were on the briefs for the appellees.

The opinion of the court was delivered by

WEDELL, J.: Two actions were filed by a man and his wife to reform a health and accident policy and to enforce it as reformed. Judgment was for plaintiffs, George E. and Katheryn Gilbert. The defendant, Mutual Benefit Health & Accident Association, appeals.

The only reformation sought was the correction of the effective date of the policy in order to make it reflect the alleged agreement pursuant to which the application for insurance was signed and the first quarterly premium paid. Appellees were injured in an accident the day after making such payment and before the home office of the insurer had issued the policy. The same proof applied to each case. The actions were consolidated below and the appeals are consolidated. The trial court made the following findings of fact and conclusions of law:

"1. The defendant is organized and in existence for the purpose of selling and writing policies of Insurance, and was doing business as such in the State of Kansas, during the year 1950.

"2. That during the year 1950 the defendant's Kansas City, Missouri, office was a so-called 'direct dealing' office and the Kansas City, Kansas, office was a so-called 'sub-office' of the Kansas City, Missouri, office, and Frank Stephens, Jr., was the assistant manager of the Kansas City, Missouri, office and a general agent of the defendant, and Melvin Colhour was a soliciting agent of the defendant, and Donna Ashley was a clerk in the Kansas City, Kansas, office of the defendant.

"3. That on the 29th day of June, 1950, defendant's agent, Melvin Colhour,

sold the plaintiffs defendant's so-called Hospital Expense Policy of Insurance and filled out an application for such a policy; said Melvin Colhour informed the plaintiffs that they would be covered by insurance as of the day they paid the first quarterly premium, if the defendant Company issued a policy of Insurance; and further informed the plaintiffs that the first quarterly premium of $24.80 to be paid by them would pay for insurance until October 1, 1950, if the premiums were paid on the next day as plaintiffs had agreed to do.

"4. That Melvin Colhour when filling out the application prior to plaintiff George Gilbert signing same, filled in the blanks at the bottom of said application as follows, 'premium pays insurance to October 1, 1950, this June 30th, 1950'; and that after signing the application plaintiff George Gilbert did not again see the application nor hear from the defendant Company in regard to the application until he received a policy in August of 1950.

"5. That on the 30th day of June, 1950, Katheryn Marie Gilbert, one of the plaintiffs, paid $24.80 to Donna Ashley in the Kansas City, Kansas, office of the defendant Company, as the first quarterly premium for said Hospital Expense Policy.

"6. Donna Ashley, prior to June 30th, 1950, had been instructed by Frank Stephens, Jr., general agent of the defendant Company, that she was to write in the word 'received' and stamp in the date on the upper middle margin of such an application upon receiving the first quarterly premium, and she had been further instructed by said general agent, that the date she was to stamp on the upper middle margin of the application should correspond to the date at the bottom of the policy which had been entered by the soliciting agent when filling out the application; Donna Ashley followed these instructions of the general agent when she received the plaintiff's premium and wrote the word 'received' and stamped in a date on the upper middle margin of plaintiff's application, but in stamping in the date Donna Ashley mistakenly stamped in 'July 3, 1950,' rather than the proper and true date of 'June 30, 1950.'

"7. Plaintiffs had a serious accident on the evening of July 1, 1950, resulting in their being hospitalized.

"8. In October of 1949 the defendant Company issued a procedure bulletin to all managers which was in effect at the time of the application and policy here in question and which reads in part as follows:

" 'To All Managers:

Procedure Bulletin 172
Applications H&A
Underwriting H&A

Dating of Policies
Full Premiums collected with Applications, Partial Payments and C. O. D. Applications.
It has become necessary to establish a uniform practice of dating policies. The following rules have been established for the Home Office in order that this may be accomplished.
1. *Full First Premium Collected at Time Application is Signed.*

The policy will bear an issued date which agreed with the date the *application was received in the State Manager's* office or any *direct dealing*

*District Office,* to become effective at 12 o'clock noon on that date, subject to the acceptance of the risk by the Home Office.

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

In order to prevent any misunderstandings it is important that your office exercise extreme care to see that  .  .  .

1. The face of the application is stamped (center margin near top of application) to show the date it was received in your office, or  .  .  .'

"It was pursuant to these procedure rules that Frank Stephens, Jr., instructed Donna Ashley to receive the applications and to stamp the date of receiving in the center margin near the top of the application.

"9. On the 5th day of July, 1950, the abovesaid application was received in defendant's home office at Omaha, Nebraska, and in due course of business came into the hands of Frank A. Mech, one of the defendant's underwriters, who, as per his instructions in processing an application, determined that the defendant Company should assume the risk and thereupon issued a policy; to establish the 'policy date' or the date of which insurance would be in effect, said Frank A. Mech looked to the upper center margin of the application and made the 'policy date' correspond to the date stamped there under the word 'received' which was the precise method said underwriter was instructed to use in each case to establish the 'policy date.' In as Donna Ashley had mistakenly stamped in July 3, 1950, in the upper middle margin under the word 'received' instead of the true date of June 30, 1950, said underwriter also mistakenly made the 'policy date' July 3, 1950, rather than the correct date of June 30, 1950.

"10. The policy of defendant as contained in instructions from its home office to its agencies, at all times material to this suit, was, in cases in which no binding receipt is issued, to issue policies bearing policy dates identical to the dates on which application for said policies are received in direct reporting offices of defendant.

"11. The policy of defendant in issuing policies bearing policy dates identical to the dates on which the applications for said policies are received in direct reporting offices of defendant, in cases in which no binding receipts are used, was communicated by defendant to the Kansas City, Missouri, office of defendant of which Frank L. Stephens is manager, prior to June 29, 1950.

"12. The Kansas City, Missouri, office of defendant of which Frank L. Stephens is manager, was a directing [*sic*] reporting office of defendant at all times material to this suit.

"13. The application for the policy here in litigation was received in the Kansas City, Missouri, office of defendant, of which Frank L. Stephens is manager, on July 3, 1950.

"14. The application for the policy here in suit was received at the home office of defendant on July 5, 1950, and a policy was issued by said home office on that date.

"15. The accident involved in this litigation occurred on July 1, 1950.

"CONCLUSIONS OF LAW BY THE COURT.

"1. Frank Stephens, Jr., general agent and assistant manager of defendant's Kansas City, Missouri, direct dealing office delegated to Donna Ashley of the

Kansas City, Kansas, sub office, the authority to receive applications, including plaintiffs' application, on behalf of said general agent, and to perform the function of indicating on the application the day the premium was received; and all of said acts on the part of Donna Ashley were purely clerical and ministerial in nature and did not involved [*sic*] the exercise of judgment or discretion, and said acts when performed became the acts of said general agent and were binding on the defendant Company, so that defendant's direct dealing office legally received the application and premium in question when Donna Ashley received them on the 30th day of June, 1950.

"2. The application for defendant's Hospital Expense Policy numbered FHMK 60 267517 50M upon which Donna Ashley mistakenly entered the erroneous date of July 3, 1950, on the upper center margin thereof, will be reformed so as to read 'received June 30, 1950'; and the 'policy date' of said policy erroneously established by the defendant Company's underwriter, Frank A. Mech, as July 3, 1950, due to the abovesaid mistaken entry by Donna Ashley, will be reformed so that said policy shows a 'policy date' of June 30, 1950; and plaintiffs will each be given judgment on their separate causes of action on the policy as reformed and in the amounts mutually stipulated to by counsel.

"3. The policy here in suit was issued by defendant with erroneous date July 3, 1950, when it should have been dated June 30, 1950."

Appellant concedes it did not, and does not now, complain concerning any finding of fact. It requested no additional findings and it filed no motion for judgment in its favor on the findings made. The only possible grounds for appeal contained in its motion for a new trial, in view of its contentions, are:

"ERRONEOUS RULINGS OF THE COURT.

"The Judgment is in whole or in part contrary to the evidence."

The findings and the record make it entirely clear it was the intent, purpose and understanding of the insured, the soliciting agent from the Kansas City, Kansas, office and its manager that the policy should be effective on the date the first quarterly premium was paid, to wit, June 30, 1950, and that appellees need have no worry about not having immediate insurance coverage.

Not only does that fact clearly appear from the oral testimony of both appellees' and appellant's witnesses but the written application itself, in the form originally signed, evidences this fact. (Findings 3 and 4.) In addition to the date of the premium payment on June 30, 1950, the application at that time further stated that the quarterly premium paid the insurance to October 1, 1950. Although finding 4 to that effect resulted from conflicting evidence, resolved in appellees' favor, relative to what the application contained at the time of signing, it is plain, as will presently appear, this is precisely what

appellant's agents, according to their own testimony, intended. Manifestly in order for the quarterly premium to provide insurance coverage for three months or until October 1, 1950, it necessarily follows the policy had to be effective on the date of the accident, July 1, 1950.

Furthermore Frank L. Stephens, Jr., general agent and assistant manager of the Kansas City, Missouri, office, appellant's direct forwarding office, testified with commendable frankness: He, personally, on July 3 changed the application at the request of Mr. Colhour, the soliciting agent in the Kansas City, Kansas, office, by striking out, at the bottom, the word "November" and substituting therefor the word "October" and that he also altered the other line so as to make it read, "June 30, 1950"; Colhour advised him the application had been improperly dated; that he (Stephens) made these changes in the application for the purpose of having the policy issued as of June 30, 1950; that if this application had been dated June 30, 1950, in the top of the center margin, as it was at the bottom, he assumed the policy would have been issued as of such date by the home office.

It, therefore, is entirely clear, under appellant's own evidence, this application was not properly dated at the top by appellant's agents in order to reflect the undisputed agreement of the contracting parties and further that the general agent and assistant manager of the direct forwarding office in Kansas City, Mo., attempted to alter it so as to reflect the true terms on which the application was based.

In addition to the foregoing facts it also should be noted it had been the undisputed practice of the Kansas City, Kan., office and also of the Kansas City, Mo., office to have applications obtained through the Kansas City, Kan., office bear the same date in the top center margin as was contained at the bottom of the application. The Kansas City, Mo., office changed that practice of processing policies on applications received from the Kansas City, Kan., office after the instant controversy arose. It changed its practice by reason of an interpretative bulletin from the home office of appellant which was issued in order to clarify a former procedure bulletin.

In any event the established practice of those offices had been and was in operation at the time this application was processed. Notwithstanding their clear intent and purpose to follow such practice in order to have a policy issued by the home office effective as of June 30, 1950, they left at the top margin of the application the date

of July 3, that being the date the application was received in the mail by the Missouri office. The application was forwarded to the Missouri office on July 1. July first and second of 1950 were Saturday and Sunday. Appellant's home office, in keeping with its practice, issued the policy as of July 3, the date the application showed in its top margin it had been received in the Kansas City, Missouri, office.

Whether the established practice of the Missouri office relative to the dating of applications obtained through its Kansas City, Kansas, office was due to the close proximity of those offices and the ease of prompt communications between them does not appear and is not our concern. It is somewhat difficult to believe the home office was not aware of this established practice as it pertained to the two Kansas City offices. Assuming, however, it was not aware of it, and we impugn no bad motives, it is beyond controversy that the Kansas City offices made a mistake, based on their own established practice, by their failure to place the date of June 30, instead of July 3, at the top of the application in order to disclose clearly to the home office the true terms on which the application for insurance was made. It is further apparent from the evidence that this failure prevented the issuance of the policy by the home office as of June 30 for the reason that had the application been so dated at the top the policy would have been issued as of such date.

Under such circumstances may the insurer defeat reformation of the policy and its enforcement as reformed?

Appellant argues where reformation of a policy is sought on the ground of mistake, and without fraud, it is necessary to establish *mutuality of mistake* by clear and convincing evidence, citing *Algeo v. Employers Indemnity Corporation,* 119 Kan. 186, 237 Pac. 879; *Waddle v. Bird,* 122 Kan. 716, 253 Pac. 576; *Home Owners' Loan Corp. v. Oakson,* 161 Kan. 755, 173 P. 2d 257, and similar cases. This is the general rule. See, also, *Federal Land Bank v. Bailey,* 156 Kan. 464, 468, 134 P. 2d 409.

We previously have discussed the mistake made by appellant's agents in failing to make the application reflect the agreement between the contracting parties. Surely no one can contend this application, in the light of the facts formerly discussed, including the insertion of the date of July 3, constituted the application signed by the insured. In view of this record it readily may be conceded appellant's agents did not deliberately perpetrate a fraud on appel-

lees. It appears they endeavored to get a policy issued as of June 30 in harmony with the true terms of the application and the agreement. Nevertheless the insertion of the date of July 3 in the top margin of the application resulted in a constructive fraud on appellees. It prevented the delivery of the policy for which they applied and paid the premium.

The general rule that instruments can be reformed only for want of *mutual mistake* is qualified in the case of actual fraud. (*Cox v. Beard,* 75 Kan. 369, 89 Pac. 671; *Hickman v. Cave,* 115 Kan. 701, 224 Pac. 57; and likewise in cases of constructive fraud; *Atkinson v. Darling,* 107 Kan. 229, 191 Pac. 486; *Federal Land Bank v. Bailey,* supra.)

We are not concerned with the cause of the failure to date the application so as to bring it into harmony with the true terms of the application and the agreement to provide appellees with immediate insurance coverage. It has been held reformation of an instrument will be granted without regard to the cause of the failure to express the contract as actually made, whether due to fraud, mistake in the use of language, or any other thing which prevented the expression of the true intention of the parties. (*Federal Land Bank v. Bailey,* supra, p. 469, and cases therein cited.)

Appellant contends under the terms of its contract with Colhour, the latter, as a soliciting agent, had no authority to make a binding contract of insurance which contravened the provisions in the application that no insurance would be effected until the policy was issued. We shall deal presently with that specific provision. We, however, need not engage in any lengthy discussion of Colhour's authority. Under the facts of this case that subject presents an abstract question. Colhour's agreement was approved by the general agent of the Kansas City, Kan., office and likewise by Stephens, a general agent who was also the assistant manager of the direct dealing district office in Kansas City, Mo. The acts of those officers, in contemplation of law, were the acts of their principal and binding on it. (*Boberg v. Fitchburg Mutual Fire Ins. Co.,* 127 Kan. 787, 275 Pac. 211; *Phoenix Mutual Life Ins. Co. v. Central States Fire Ins. Co.,* 137 Kan. 69, 73, 19 P. 2d 696.)

In passing, however, it is also well to state it is the duty of a soliciting agent to accurately and truthfully state the full terms upon which an application is made and to submit it in that form to the

principal for his approval or rejection. (*Pfiester v. Insurance Co.,* 85 Kan. 97, 116 Pac. 245; *Mercantile Co. v. Insurance Co.,* 101 Kan. 522, 168 Pac. 323; *Phoenix Mutual Life Ins. Co. v. Central States Fire Ins. Co.,* supra.) The failure of a soliciting agent to do so is in legal effect the fault of his principal. (*Pfiester v. Insurance Co.,* supra.) Surely the same rule must apply with far greater force to the officers previously mentioned who approved Colhour's agreement in harmony with the established practice of both Kansas City offices.

Any conflict in operating procedure between the home and district offices of an insurance company, resulting from a misunderstanding between them, is an internal matter to be adjusted by them. It is not a conflict which may be settled among themselves to the detriment of a wholly innocent applicant for insurance. It simply will not do for courts to place their stamp of approval on conduct of insurance companies which permits soliciting agents to sell accident insurance to people with the enticing assurance it will be effective immediately for a contemplated automobile, or other, trip and then find that by reason of some possibly conflicting procedure in the home and district offices of the company, or because of some oversight or mistake by the latter officers or the soliciting agent in making the application reflect the true terms thereof, the insured, having paid his premium which is accepted, is held to be without insurance coverage.

We now return to appellant's contention, vigorously asserted, that appellees are bound by the following provision in the application:

"Do you understand and agree that no insurance will be effected until the policy is issued? *Yes*"

In view of what already has been said we need not unduly labor this contention. We are not unmindful of the importance of the quoted provision as applied to many insurance problems not here involved. The issue here is not whether the appellant-insurer might have rejected the application for some justifiable reason. The only question here pertains to the effective date of the policy.

Touching that specific question we find a conflict between the above quoted provision and other statements in the application itself as signed by Gilbert. It is elementary that ambiguous terms must be most strongly construed against the insurer. (*Mercantile Co. v. Insurance Co.,* supra, p. 526.) Here the application as

signed by Gilbert discloses he applied for insurance coverage which would begin June 30, 1950. He did not apply for insurance which would begin July 3. That date was later placed on the application by appellant's agents without Gilbert's knowledge or consent. The premium was paid on June 30, appellant retained it and issued a policy but not the policy for which Gilbert had applied.

Furthermore the application did not contain the positive and admitted agreement of both Kansas City offices that the policy should be effective as of June 30. Appellant's own evidence admits if the application had been dated at the top so as to reflect that agreement the policy would have been issued by the home office as of June 30 in harmony with its own practice and the established practice of both Kansas City offices. This is a plain concession that under appellant's own home office practice it did not adhere, on the point here involved, to the provision in the application now relied on but that, on the contrary, it placed an effective date on some policies prior to the date on which such policies were actually issued by the home office. In fact that is precisely what the home office did in this case. This application was not received in the home office until July 5 but the policy was neverthless dated July 3.

Under these circumstances we think the quoted provision now relied on by appellant cannot prevail over the specific terms of the application relative to the effective date of the policy and the admitted agreement in harmony therewith. Appellees were entitled to have the policy reformed to conform to the intendment of the parties.

The judgment is affirmed.