No. 45,619

OMEGA STAMPS, *Appellee,* v. CONSOLIDATED UNDERWRITERS, *Garnishee* and *Appellant,* and MARTIN A. LANDWEHR, Et. Al., *Defendants* and *Appellees.*

MARY RADCLIFF, Mother and Next friend of ROSALIE RADCLIFF, *Appellee,* v. CONSOLIDATED UNDERWRITERS, *Garnishee* and *Appellant,* and MARTIN A. LANDWEHR, Et. Al., *Defendants* and *Appellees.*

MAUDE BURTON, Mother and Next friend of BUELAH CAROLYN BURTON, *Appellee,* v. CONSOLIDATED UNDERWRITERS, *Garnishee* and *Appellant,* and MARTIN A. LANDWEHR, Et. Al., *Defendants* and *Appellees.*

HELEN F. LEE, *Appellee,* v. CONSOLIDATED UNDERWRITERS, *Garnishee* and *Appellant,* and MARTIN A. LANDWEHR, Et. Al., *Defendants* and *Appellees.*

PHYLLIS ANN LEE, A minor by and through HELEN F. LEE, her Grandmother, next of kin, and guardian, *Appellee,* v. CONSOLIDATED UNDERWRITERS, *Garnishee* and *Appellant,* and MARTIN A. LANDWEHR, Et. Al., *Defendants* and *Appellees.*

(468 P. 2d 84)

Opinion filed April 11, 1970.

*Glenn J. Shanahan,* of Bryant, Cundiff, Shriver, and Jordan, of Wichita, argued the cause and was on the brief for the appellant Consolidated Underwriters.

*Mearle D. Mason,* of Hill and Mason, of Wichita, argued the cause and was on the brief for the appellees Mary Radcliff and Maude Burton.

*John W. Brimer,* of Higgins, Brimer, Kirk, and Bogart, of Wichita, argued the cause and was on the brief for the appellees Omega Stamps; Helen F. Lee, and Phyllis Ann Lee.

Frank and Kelly, of Wichita, were on the brief for the defendant-appellee Martin A. Landwehr.

Mills and Mills, of McPherson, were on the brief for the defendant-appellee Alliance Mutual Casualty Company.

Fleeson, Gooing, Coulson and Kitch, of Wichita, were on the brief for the defendant-appellee Employers Mutual Casualty Company.

The opinion of the court was delivered by

KAUL, J.: Plaintiffs-appellees are judgment creditors of Martin A. Landweher, defendant-appellee. Plantiffs' judgments were recovered in five separate actions which were consolidated for trial. The negligence of defendant Landwehr while driving an automobile with the owner's permission was determined to have been a proximate cause of a serious accident on April 28, 1962, at the intersection of U. S. Highway 54 and Airport Road west of Wichita.

The accident resulted in the deaths of plaintiffs' deceased, who were passengers in an automobile owned and driven by Darrell D. Smith when the collision with the automobile driven by defendant Landwehr occurred.

Before the five actions involved in this appeal were tried, three related cases dealing with claims of Landwehr and his passenger, James D. Maples, against the estate of Smith, and a claim for the death of Smith, against Landwehr and Maples, were consolidated and tried by the same court. The court found both Smith and Landwehr guilty of negligence which was the proximate cause of the accident and recovery was denied in the actions, based on their claims against each other. As to Maples the court found that

he was not engaged in a joint venture with Landwehr; that Landwehr's negligence was not imputed to him; and that he was entitled to recovery from the estate of Smith.

The evidence adduced in the three related cases was stipulated to be identical with the evidence that would have been introduced in the instant cases. These five cases, in that posture, were then submitted on the record of the three related cases. The court determined that judgment should be granted in favor of all plaintiffs against defendant Landwehr on the issue of liability and reserved the question of damages for later determination.

Final judgments were entered on September 16, 1966, and damages awarded to plaintiff Stamps in the amount of $26,623.00; to plaintiff Radcliff $26,500.63; to plaintiff Burton $26,376.13; to plaintiff Phyllis Ann Lee $25,000.00, and to plaintiff Helen F. Lee $1,376.13.

The 1949 Ford automobile driven by defendant Landwehr at the time of the accident was owned by Earl J. Riley d/b/a Riley Motor Company, a used car dealer. Riley was insured under a policy issued by garnishee Alliance Mutual Casualty Company, referred to hereafter as Alliance.

At the time of the accident the 1949 Ford was being kept on a lot owned by Chet M. Tolson, d/b/a Chet's Body & Paint Shop, under an arrangement with Riley. Tolson later became associated with one Harry Shoemaker and the business name was changed to "Chet's Motor Company." Tolson was insured by garnishee Employers Casualty Company, referred to hereafter as Employers.

In the late afternoon, preceding the night of the accident, Darrell Hollis, a salesman for Riley, gave Maples, a prospective purchaser, permission to take the car from Tolson's Lot after affixing a Riley Motor Company dealer's license plate. Maples took the automobile to his home and later picked up Landwehr who drove the automobile until the collision occurred.

Defendant Landwehr is the son of Martin J. and Florence Landwehr. Landwehr's were insured under a "Combination Automobile Policy" issued to Martin J. Landwehr, d/b/a Landwehr Manufacturing Company by garnishee-appellant Consolidated Underwriters, hereafter referred to as Consolidated. The policy is the subject of this appeal and the central question is whether it should be reformed so as to afford liability coverage for defendant Martin A. Landwehr while driving the Riley automobile at the time of the

accident. It is conceded the policy as issued did not afford this coverage.

The judgments entered on September 16, 1966, were not paid.

On March 15, 1967, affidavits for garnishment were filed by the respective plaintiffs against garnishee-appellant (Consolidated Underwriters); Employers Casualty Company and Alliance Mutual Casualty Company.

The respective garnishees answered and each denied any indebtedness to defendant Landwehr. The respective plaintiffs replied to the separate answers of garnishees, controverting the answers and alleging as to each garnishee that it did—

". . . have in its possession, funds belonging to the defendant in the above styled case, or in the alternative, has funds by contract, expressed or implied, or arising by operation of law between the defendant and said Garnishee, or by reason of contract, express or implied, between Garnishee and some persons privy to the defendant, or by implied contract between parties privy or in fiduciary or parental relationship, has funds which should be paid to this replying plaintiff, in satisfaction of the judgment in favor of the plaintiff and against the defendant for and on behalf of said defendant."

With issues thus joined, requests for admissions were filed by all parties and answered by respective responses.

After a pretrial conference an order was entered in which stipulations were set out, issues defined and witnesses identified. It was further ordered that the trial was to be limited to the issues contained in the pretrial order, except by order of the court.

The capacity of plaintiffs to seek reformation of the Consolidated policy was not challenged.

Either immediately prior to trial or in the early stages thereof, garnishee Alliance arrived at an agreed settlement with each of the five plaintiffs. The actions of plaintiffs Stamps, Radcliff and Burton against Alliance were dismissed with prejudice. An agreed settlement between Alliance and plaintiffs Helen F. Lee and Phyllis Ann Lee, a minor, was approved by the court and judgment was entered accordingly. At this point Alliance was dismissed from the case without objection on the part of any other parties to the litigation.

The trial proceeded on the claims of the five plaintiffs against garnishees Employers and Consolidated.

The trial court made extensive findings of fact and conclusions of law resolving all issues defined by the pretrial order.

With respect to the liability of garnishee Employers, the trial

court found that Tolson and Shoemaker at the time of the accident had no proprietary interest in the 1949 Ford and that it was not an insured automobile within the terms of the Employers' policy as to defendant Landwehr or his judgment creditors. No appeal was taken from this judgment.

Regarding the liability of Consolidated the trial court found that Landwehrs desired full liability coverage on Mr. and Mrs. Landwehr and each of their two sons, and that both Consolidated and its agent Kimple knew the type of insurance Landwehrs had requested; and that Consolidated knew that the policy issued did not provide the coverage requested. The trial court further found that defendant Martin A. Landwehr was operating the 1949 Ford, with the permission of the owner, at the time of the accident.

Judgment was entered holding that Consolidated was indebted to plaintiffs in the amount of the limits of the policy and Consolidated was ordered to pay the same to the judgment creditors of Martin A. Landwehr, the plaintiffs herein.

There appears to be little dispute in the facts concerning negotiations between Kimple and the Landwehrs, the taking of the application, the types of coverage available at Consolidated, which could have been issued on receipt of the application, and the coverage in the policy actually issued. The facts are established by the trial court in its findings. Those which we believe material to our discussion will be recited.

With reference to the application the trial court found:

"III

"Said policy was issued to cover four vehicles, three passenger and one commercial. All four were shown to be titled in Martin J. Landwehr on the application. Of these, one of the passenger automobiles was shown to be principally driven by Martin A. Landwehr, defendant, and another by Sidney Landwehr, another son of Martin J. Landwehr, who was married. The application also showed defendant Martin A. Landwehr and his brother Sidney as having their own cars. The commercial vehicle—a pickup truck—was being operated under a KCC permit, and the application showed that a KCC filing was required for coverage."

As its findings IV, V and VI, the trial court adopted requested findings of Consolidated Nos. 6, 7 and 8, which read:

"IV

"[6] The garnishee Consolidated Underwriters had automobile insurance policies filed and approved with the officer of the Commissioner of Insurance in Topeka, Kansas, and which the garnishee Consolidated Underwriters was authorized to issue, including the policies entitled 'Combination Automobile

Policy' (Plaintiffs' Exhibit 3) and 'Family Combination Automobile Policy' (Plaintiffs' Exhibit 6).

"V

"[7] The Family Combination Automobile Policy of Consolidated Underwriters provided under the provisions of 'Part I—Liability' that the 'person insured' were 'with respect to a non-owned automobile, (1) the named insured, (2) any relative, but only with respect to a private passenger automobile or trailer, provided the actual use thereof is with the permission of the owner.'

"VI

"[8] Garnishee Consolidated Underwriters Exhibit 'A' are the endorsements of Consolidated Underwriters on file and approved with the office of the Commissioner of Insurance on November 1, 1961, when its policy of insurance was issued to Martin J. Landwehr, D/B/A Landwehr Manufacturing Co."

Other findings of importance to our decision are:

"VII

"Garnishee Consolidated Underwriters filings were selected on its part from a complete set of policies, endorsements, et cetera, which it purchased from the National Board of Casualty Underwriters. On November 1st, 1961, said Garnishee had not elected to file for approval by the Commissioner of Insurance any endorsement whereby the provisions of the 'Combination Automobile Policy' could be extended and made applicable to one other than the named insured or his spouse. Such an endorsement was available but Garnishee Consolidated Underwriters had chosen not to file it.

"X

"The policy issued was given a 2(c) rating—indicating a principal male driver, unmarried, under 25 years of age—which specifically referred to defendant Martin A. Landwehr. This amounted to the highest rating possible short of an assigned risk—and the maximum premium was charged.

"XI

"Separate policies could have been issued for each vehicle named in the application at no increase in premiums over the premium charged. Likewise, if the policy issued had named both defendant Martin A. Landwehr and his brother Sidney as named insureds, the premium charged would have been the same. However, it was not the policy of Garnishee Consolidated Underwriters to insure anyone not of legal age and not the holder of title.

"XII

"While it was out of the ordinary for Garnishee Consolidated underwriters to insure a family under the type of policy issued, it was used because of the inclusion of the pickup truck requiring a KCC filing. Garnishee Consolidated Underwriters intentionally issued this type of policy rather than any other or combination of others."

Finding XIII recites the conversations between Landwehrs and agent Kimple surrounding the taking of the application.

Other pertinent findings read:

"XIV

"Kimple advised the senior Landwehr's that they could obtain full coverage both for themselves and their sons, and specifically assured them that the boys would be covered while driving other vehicles. He prepared the application —sent it to Garnishee Consolidated Underwriters—and garnishee issued the policy of which Plaintiff's Exhibit 3 is a copy. This policy did not provide full coverage for anyone but the named insured and spouse, and only Martin J. Landwehr was a named insured in the policy. Neither defendant Martin A. Landwehr nor his brother Sidney were named insureds, and neither was provided with full coverage, or coverage equivalent to that provided for the senior Landwehr's.

"XV

"Premiums were billed to Kimple by garnishee. Kimple collected them from Martin J. Landwehr, and also provided Martin J. Landwehr with a breakdown of premiums so that the latter could collect the proportionate share from defendant Martin A. Landwehr and his brother Sidney.

"XVI

"Neither Garnishee Consolidated Underwriters from their home office, nor their local agent Kimple, ever advised the Landwehr's that the policy that was issued provided substantially less coverage than the Landwehr's had requested. Neither garnishee nor its agent ever advised the senior Landwehr's or defendant Martin A. Landwehr or his brother, that the policy did not provide full coverage on the two sons. To the contrary, Kimple assured the senior Landwehr's that 'the boys were fully covered' and even after young Martin's accident advised the senior Landwehr's 'not to worry about it, that we have insurance for it.'

"XVII

Both Garnishee Consolidated Underwriters and its agent Kimple, knew the type of insurance coverage the Landwehr's had requested, and knew likewise, that the policy issued did not provide that coverage. They also knew that the coverage requested was available on the insurance market, and would cost no more in premiums to the purchaser than the premiums charged for the policy issued.

"XVIII

"The Landwehr's both parents and sons, did not know that the insurance policy issued did not provide full coverage on the sons as they had been assured it would and did until after the accident, and even then were first reassured by Kimple that the policy did provide coverage."

The trial court announced conclusions as follows:

"I

"A soliciting agent of insurance is an agent of the company and not of the insured.

"II

"Agreements between such an agent and an applicant for insurance, as to what insurance coverage shall be applied for in the application are construed

as agreements made between the applicant and the company. The knowledge of the agent is the knowledge of the company.

"III

"It is fraud for any insurance company—or reciprocal exchange—to accept an application for insurance coverage from a prospective purchaser who states explicitly the type of coverage sought, and then issue a policy providing substantially less coverage, without advising the applicant of the variance.

"IV

"Where a reciprocal insurance exchange deliberately issues a type of policy that will not provide the coverage sought by applicant without an endorsement, and where said reciprocal exchange well knew that they had elected not to file such an endorsement with the Commissioner of Insurance, they will, in the event of a loss, be estopped from asserting that the policy issued cannot be reformed to provide the full coverage applied for, by pleading that they did not have the proper filings with the Commissioner.

"V

"The intricacies and legal niceties involving reciprocal exchanges as compared to other types of insuring groups and companies are peculiar to the understanding of the management level in the insurance industry, and the general public is not chargeable with such knowledge.

"VI

"Where a reciprocal insurance exchange—through its soliciting agent—prepares an application for specific and identical insurance coverage for four members of a family, knowing their ages, marital status, and how their vehicles were owned and registered, and seeks the signature of only one adult member of said family (though the others are legally capable of contracting for insurance), and a policy is issued and premiums paid, said reciprocal exchange will in event of a loss be estopped from asserting that they do not insure anyone unless they are of legal age, a title owner, and have signed the power of attorney included in the application.

"VII

"The policy issued by Garnishee Consolidated Underwriters should be reformed to include defendant Martin A. Landwehr as a named insured.

"VIII

"Defendant Martin A. Landwehr was operating said vehicle with the permission of the owner at the time of the accident.

"IX

"Garnishee-defendant Consolidated Underwriters is legally obligated to pay to the judgment creditors of defendant Martin A. Landwehr the limits of its policy as reformed, in accordance with the terms and provisions thereof.

"Please prepare Journal Entries incorporating the Findings and Conclusions set forth herein, and entering judgment accordingly."

Consolidated filed posttrial motions directed at the findings and conclusions and a motion for a new trial, which were overruled.

On appeal Consolidated attacks the judgments below in a number of specifications. With one exception all of the specifications of error revolve around the central issue whether the evidence adduced was sufficient to support the trial court's judgment reforming the policy so as to provide liability coverage for Martin A. Landwehr.

The exception referred to concerns a specification that the trial court erred in refusing to determine the liability of Consolidated in relation to that of Alliance.

Consolidated is a reciprocal insurance exchange. Jerome Churchman, Vice President of Underwriting for Consolidated, was called as a witness by it and described a reciprocal insurance exchange as "a place where subscribers, also known as policyholders, exchange insurance protection, and coverage with each other under the management, administration and direction of an attorney-in-fact." Churchman described Consolidated as an independent filer and for competitive purposes deviated from rates filed by the National Bureau of Casualty Underwriters with the Commissioner of Insurance. Churchman also stated that Consolidated was a "manual purchaser" which he defined as meaning it purchased only certain manual endorsements from the Bureau, which were then worked over and filed with the Commissioner. He testified:

". . . The company made its decision as to which of these endorsements would be filed and which would not be filed. . . ."

Mr. Churchman's testimony with respect to Consolidated's procedure when the application was received in the home office will be discussed hereafter.

The application for the insurance in question was taken on October 18, 1961, by John Stanley Kimple, who described himself as a self-employed insurance salesman in Wichita.

Martin J. Landwehr was engaged in business as the Landwehr Manufacturing Company. The business was manufacturing ornamental iron. He had a pickup truck, a car, and two other cars in his name that belonged to his two sons. His son Martin (defendant) had a 1957 Chevrolet and Sidney a 1954 Chevrolet. He testified that he had insurance with another company in 1961, but when he received a renewal statement which he thought was a "little bit high," he contacted Kimple who furnished an estimate. He further testified that he and Kimple discussed the ownership of the vehicles and that he told Kimple:

". . . I wanted the boys covered so when they was on the road they were covered from anything. I mean that's the reason I carry insurance for them to be covered fully. This is what I told Mr. Kimple."

Mrs. Florence Landwehr, mother of defendant (Martin A. Landwehr), testified that she was present when her husband and Kimple discussed insurance and "we told him that we wanted full liability on the boys the same as ourselves." She further testified:

". . . Our boys worked for the folks out at the farm in the summertime. They did the wheat harvest and things, and I asked Stan if they would be covered while driving my folks' vehicle and he said, 'Yes, any vehicle that they'll be driving they will be covered.'"

Kimple did not contradict any of the testimony of the Landwehrs. He testified that he filled out the application and may have signed it for Martin J. Landwehr. Kimple forwarded the application to Consolidated and the policy—when issued—was sent back to him.

Kimple further testified:

"The type of risk assigned for the purpose of rating and given to the vehicle driven by Mr. Landwehr was 2-C classification. It's major driver, male driver under 25 and single. There is no rating that has a higher premium charge than 2-C on private passenger car. Martin Landwehr was the driver of the vehicle indicated on this policy as being the car rated under 2-C classification, a 1957 2-door sedan.

.   .   .   .   .   .   .   .   .   .   .   .   .

"The premiums that I computed were similar to those on the policy. The amount charged on that policy for a 2-C rating is the maximum amount that could have been charged under that rating. . . . Normally, when I write an application for insurance I usually discuss the type of coverage given and the general features given to the people. The type of policy issued in this case was a combination automobile policy. The combination automobile policy was used because there is a commercial unit on it. That policy is used basically so it can be filed with the Insurance Commissioner to cover a Kansas Commercial ruling. The reason that this was not written on the family policy or some other type of policy is because I requested the KCC filing. It's not ordinary to insure a family on this kind of policy. The same rates would apply to a combination auto or the family auto.

.   .   .   .   .   .   .   .   .   .   .   .   .

"I believe that each one of these vehicles would have been written on a separate policy and each individual named as a named insured without any additional premium.

.   .   .   .   .   .   .   .   .   .   .   .

"I believe that Martin A. Landwehr, the son for the premium paid could have been made a named insured on either one of those policies without any additional premium charge. . . ."

Obviously, Kimple was fully informed as to the type of coverage desired, and it must be assumed he filled out an application upon

which a policy affording the coverage intended would be issued. The fact that he intended to procure full coverage for the Landwehrs by the application is established, as found by the trial court, by the uncontradicted evidence that when notified of the accident, Kimple informed Landwehrs, "Don't worry about it you got insurance for it."

The findings concerning Kimple's knowledge and the taking of the application are fully supported by the evidence. Consolidated, however, vigorously attacks the conclusions of the trial court in this regard. It asserts that an application and representations of a soliciting agent, who is not a general agent, do not make enforceable insurance contracts. It must be conceded the assertion is not without authoritative support by decisions from this and other jurisdictions.

Plaintiffs claim the question concerning agency was never seriously raised by Consolidated prior to its brief on appeal. Plaintiffs state in their brief:

"All parties agreed Kimple was the agent for the company and no issues were expanded otherwise during the pre-trial of the trial."

It is evident from the record that neither party explored to any extent the scope of Kimple's agency or his authority. From the brief testimony on the point it appears that Kimple was licensed with Consolidated and with a number of other insurers which probably establishes him as an independent agent or broker. Whether he had authority to negotiate for Consolidated is neither clearly established nor denied.

Ordinarily a broker or agent who is employed to procure insurance becomes the agent of the person for whom the insurance is procured. (43 Am. Jur. 2d, Insurance, § 149, p. 203; *Rosedale Securities Co. v. Home Ins. Co.*, 120 Kan. 415, 243 Pac. 1023)

There are many exceptions to the rule, however, and the question cannot be answered absolutely, but depends upon the circumstances of the particular case. For some purposes and under certain circumstances, a broker may represent either the insured or insurer, or both. (43 Am. Jur. 2d, Insurance, § 149, p. 203)

An examination of the many cases in this jurisdiction dealing with the subject reveals that the nature of an agency, its scope and authority, and the question whether an agreement between agent or broker and the insured is enforceable against the insurer,

are matters to be determined from the powers expressly or impliedly conferred by insurer in the light of other relevant facts and circumstances shown to exist in a particular case. (Vol. 3 Hatcher's Kansas Digest [Rev. Ed.], Insurance, §§ 22, 23; and Vol. 6 West's Kansas Digest, Insurance, §§ 73 to 78, incl.)

In view of the manner in which this case was tried below and presented on appeal, we shall pass over the question whether Kimple, as an agent, made a contract with Landwehr which was enforceable against Consolidated. The determination of that question is not required in view of our disposition of this appeal.

We believe the trial court's findings that Consolidated knew the type of coverage desired, could have afforded such coverage by issuing separate policies, charged the maximum premium, and deliberately issued a policy affording substantially less coverage, are supported by substantial competent evidence and in turn justify the decision below.

Kimple testified the maximum premium was charged; that each vehicle could have been written on a separate policy, or a family combination automobile policy issued for the same premium charge. What Kimple would have done other than what he did in order to secure full family coverage is not shown. Apparently he didn't know the effect of requesting a KCC filing.

The application does not explicitly show that full family coverage was desired, but, on the other hand, there is nothing to indicate anything less was applied for. Certainly, it clearly reflects that family coverage was desired, and if anything less than full coverage could not be or was not going to be issued for the premium charged, it was incumbent on Consolidated to make such fact known. As pointed out by the trial court in conclusion No. V the general public is not chargeable with knowledge of the legal niceties involved in the internal operations of a reciprocal exchange.

On this point we turn to the testimony of Churchman whose authority as a spokesman for Consolidated is not questioned.

Although at one point Churchman claims the proper policy for the application was issued, he also testified explicitly "We could have issued two different policies. We decided this when we received the application." He further testified:

". . . There was no endorsement which permitted a family automobile coverage to be given on this policy. There was such an endorsement available

from the National Bureau of Casualty Underwriters. It was the company's choice not to have such an endorsement on file at that time.

  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·  ·

". . . In 1961, our company according to its state filing could have afforded protection to the son while driving non-owned automobiles by the issuance of a family automobile policy in the name of the father. . . ."

The import of Churchman's testimony is that when the application was received, two different policies could have been issued, the decision was made not to do so but to issue only the combination automobile policy. Then, since by its further choice, no endorsement, though one was available from the Bureau, was on file full family coverage could not be given on this policy. Consolidated now seeks the shelter created by its own decision and choice. We agree with the trial court that under the facts and circumstances shown, Consolidated after accepting the application and then issuing a policy providing substantially less than full family coverage, without advising the applicant, is estopped from asserting that the policy cannot be reformed to provide the full coverage applied for.

After hearing the testimony of the witnesses, in particular that of Churchman, the trial court found that Consolidated intentionally issued the policy in question, rather than any other or combination of others which would have afforded the coverage applied for.

We think the evidence is sufficient to support the trial court's finding that through Consolidated's fault, the policy issued did not afford the coverage intended. Whether the fault was due to mistake or fraud, or a combination of both, reformation may be had. (*Hammond v. Insurance Co.*, 100 Kan. 582, 165 Pac. 291)

The applicable rule is stated in 17 Couch on Insurance 2d, Reformation, § 66:21:

"Where the insurer deliberately issues a policy which differs from the one for which the insured made application, without having told the insured that the one applied for cannot be obtained or without specifying the differences between the requested policy and the issued policy, the insured is entitled to reformation to make the policy conform to the one 'bargained' for." (p. 264.)

The general rules applicable to reformation of insurance policies are applicable to automobile liability policies.

The author of an annotation on the subject appearing in 1 A. L. R. 3d says:

". . . No case has been found holding or even intimating that these general rules do not fully apply to a reformation of an automobile liability policy

by adding to or substituting for the named insured the person intended to be insured." (p. 887.)

In this jurisdiction an insurance policy is reformed where through fraud or mistake the policy issued does not afford the coverage intended. (*Insurance Co. v. Darrin*, 80 Kan 578, 103 Pac. 87; *Forristal v. Security Ins. Co.*, 136 Kan. 73, 12 P. 2d 790; *Dietrich v. Retailers Fire Ins. Co.*, 137 Kan. 533, 21 P. 2d 900; and *Gilbert v. Mutual Benefit Health & Acc. Assn.*, 172 Kan. 586, 241 P. 2d 768)

It is the duty of an insurer to write a policy in accordance with the application or agreement for insurance and an insured who receives a policy may assume that the insurer has discharged its duty. (*Kansas Amusement Co. v. Maryland Casualty Co.*, 122 Kan. 800 253 Pac. 405; and *Pfiester v. Insurance Co.*, 85 Kan. 97, 116 Pac. 245.)

In the early case of *Insurance Co. v. Darrin*, supra, the question was presented and the court held:

"It is the duty of a fire-insurance company which accepts a signed application for insurance, written on a blank furnished by the company which provides that it shall be the basis on which insurance is to be effected, to write the policy in accordance with the application.

"The recipient of a policy issued in response to an application of the character described may assume that the company has discharged its duty and has written the policy on the basis of the application, and he is not obliged to read the policy to see if it conforms to the application.

"If through inadvertence, mistake or design such policy be written on a basis different from that contained in the application, it may be reformed to correspond with the application." (¶¶ 1, 3 and 5)

Consolidated argues the policy was issued in accord with the application, yet it is admitted that either the "family combination" or the "combination automobile policy" or both could have been issued. Kimple, knowing the coverage agreed upon and intending to procure it, made the application on a form provided by Consolidated. There is no showing that it was not completed in all essentials. Churchman testifies that as an agent he would have asked for two policies, yet he admits two could have been issued on the application as made, but it was decided to issue the "combination automobile" simply because a KCC filing was requested. If the application form provided by Consolidated was inadequate it was the fault of Consolidated not that of Kimple or Landwehrs.

Consolidated complains that the trial court reformed the policy in a way that could not be done by including defendant Martin A. Landwehr as a named insured because it had no endorsement on

file that could be added to the policy issued that would have extended the same coverage to all of the named drivers in the policy. Here again, Churchman admits that such an endorsement was available in the National Bureau Manual, but Consolidated had not chosen to file it. For reasons previously stated, we find no error in the trial court's holding in this regard.

One other point requires brief attention.

After the trial was completed, the court requested the submission of requested findings and conclusions. Consolidated submitted findings and conclusions that would have established that according to the provisions of its policy, even though reformed to cover Martin A. Landwehr while driving a non-owned automobile, it would only afford liability in excess of other valid and collectible insurance. In other words, as applied to this case, Consolidated claimed it was obligated only in the amount that the total liability established exceeded the valid and collectible insurance under the Alliance policy. Consolidated asserts that in this case its policy contained an "excess insurance" clause with respect to a "non-owned automobile" whereas Alliance had the owner's policy containing a "pro rata" clause and thus under our holding in *Maryland Cas. Co. v. American Family Insurance Group*, 199 Kan. 373, 429 P. 2d 931, it was obligated only for the liability exceeding the Alliance coverage.

The issue was raised by Consolidated on a posttrial motion when the trial court announced the requested findings were not considered or ruled on because the matter raised had not been pleaded, tried or raised at any point during the trial, nor was it included in the issues formulated in the pretrial order. The trial court also pointed out that no objection was lodged when Alliance was dismissed from the action and that neither Alliance nor Consolidated had submitted any evidence on the point. Under the circumstances shown we find no error.

Orders entered at pretrial conference have the full force of other orders of the court and control the subsequent course of the action unless modified at the trial to prevent manifest injustice. (*Evangelist v. Bellern Research Corporation*, 199 Kan. 638, 433 P. 2d 380; and *Brown v. Hardin*, 197 Kan. 517, 419 P. 2d 912) Here the issue was not presented on timely application when Alliance was dismissed from the action, neither was there any attempt made to

have the pretrial order modified during the trial, nor was there evidence presented and the issue tried by consent as in *Thompson v. Aetna Life Ins. Co.,* 201 Kan. 296, 440 P. 2d 548.

The judgment is affirmed.