**John W. RIDER, Administrator of the Estate of Linda C. Rider, Deceased, representative of all heirs at law of Kenneth E. Rider, Deceased, and William Wesley Rider, Deceased, et al., Appellees,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant.**

No. 74–1443.

United States Court of Appeals, Tenth Circuit.

Argued Jan. 23, 1975.

Decided April 17, 1975.

Rehearing Denied June 12, 1975.

Raymond L. Dahlberg, Great Bend, Kan. (H. Lee Turner, Great Bend, Kan., with him on the brief), for appellant.

John C. Frieden, Crane, Martin, Claussen, Hamilton & Barry, Topeka, Kan. (J. Roger Hendrix, Marshall, Hawks, McKinney & Hendrix, Topeka, Kan., with him on the brief), for appellees.

Before HILL, SETH and BARRETT, Circuit Judges.

SETH, Circuit Judge.

This diversity action was filed against State Farm Mutual Automobile Insurance Company in the United States District Court for Kansas by the administrators of the estates of Linda and Kenneth Rider; by the representative of the heirs of Kenneth and William Rider (hereinafter the Rider Estates); and by the administrator of the estate of Edward Luster, Jr. The Rider Estates asked judgment against State Farm in the amount of the policy, and the Luster Estate asked judgment in the amount of the excess of judgments entered against it over the policy limits. Edward Luster, Jr. and his wife were the named insureds in a policy issued by State Farm.

The trial court granted summary judgment against State Farm for the face amount of the policy, and also for the amount which the recovery against the insureds' estate exceeded the face amount. State Farm took this appeal. The trial court held that the failure of State Farm to issue a policy in conformance with the application, and in the absence of any explanation for a departure, constituted a fraud on the Lusters.

The basic issue raised by the parties was whether the automobile insurance policy on the car of the Lusters was in effect at the date of the collision in which Edward Luster, Jr. was killed as were three occupants of the other car. Or if the policy was not in effect by its terms, was the issuing company nevertheless bound under the law of Kansas?

The issues center on the fact that the Lusters sent in an application for a year's coverage for public liability, medi-

cal, comprehensive, collision, life insurance, and "membership dues," but the policy as ultimately issued was for a six months' period except for medical coverage and life insurance. Thus the public liability coverage according to the policy provisions was for six months. There was a binder for thirty days issued at the time the application was forwarded by the local agent to the State Farm regional office, and this expired a month before the policy was issued. When the policy was prepared, the premiums for the several coverages were recomputed and a refund was made of part of the total premium forwarded with the application. Thus two months after the application was sent to the Regional Office, a policy of insurance was sent to the Lusters with a refund but with no explanatory letter. The policy date was May 17, 1968, which was the date of the application, and the policy period was listed as 5/17/68 to 5/17/69. At the bottom of the cover sheet of the policy was the notation: "6155 Policy Period ABC & S to 11/17/68." An endorsement on the last page of the policy also stated that coverages A, B, C, and S had a policy period to 11/17/68. Mrs. Luster saw the policy but paid no attention to its terms. Edward Luster, Jr. could read only the simplest words. No one from State Farm, nor the agent, explained to the Lusters why they received a refund check, or told them that the policy period for some of the coverages had been reduced to six months.

On October 17, 1968, State Farm sent a notice that a premium was due November 17, 1968. This was received by Mrs. Luster and she was concerned that she could not pay at that time and called the office of the local agent, Mr. Russell Yeager, on November 7, 1968. Mr. Yeager's secretary told her that she could keep the policy in force by paying half of the premium plus a $2.00 service charge. Mrs. Luster called Mr. Yeager at home later that day, and he also told her that she could extend the policy for forty-five days by paying half of the premium plus $2.00. Mrs. Luster did not pay any premium at that time.

State Farm asserts that it sent the Lusters an expiration notice on November 20, 1968, but Mrs. Luster testified that she did not receive it. The ten-day grace period to pay the premium expired November 27, 1968, without payment, and State Farm contends that the policy thus expired November 17, 1968.

On November 28, 1968, Edward Luster, Jr. was driving the insured car in Topeka when he collided with a car driven by Kenneth E. Rider. Mr. Luster, Mr. Rider, Mrs. Rider, and a Rider child were killed in the collision. Claims were filed against the estate of Edward Luster, Jr. on behalf of the Riders. The administrator of Mr. Luster's estate notified State Farm that these claims (exceeding $100,000) could be settled within the limits of the Lusters' policy ($20,000). State Farm was continuously aware that the parties asserted that the policy issued to Edward and Lucille Luster covered the accident. State Farm refused to defend the claims or to settle, stating that the policy had expired November 17, 1968, and was not in effect on the date of the accident. Judgments were awarded against the estate of Edward Luster, Jr. in the Kansas state courts in the following amounts: $1,450.78 to the administrator of the estate of Linda C. Rider; $61,000.00 to the representative of the heirs of Linda C. Rider; $1,685.00 to the administrator of the estate of Kenneth E. Rider; $71,996.74 to the administrator of the estate of Linda C. Rider and representative of the heirs of Kenneth E. Rider and William W. Rider.

*The Relationship Between The Application and The Policy Issued:*

Plaintiffs-appellees assert that the policy must be reformed to agree with the terms of the application, or that State Farm is estopped to deny that the policy covers the accident, or that they were entitled at the least to six months' coverage. State Farm argues that the policy does not cover the accident, whether by reformation or estoppel, because Mrs. Luster became aware of the reduced policy period in October 1968 and before the

accident, and did not act on this knowledge. State Farm also argues that the Lusters had constructive notice of the changes in the policy when they received the policy.

■ The parties attempt to distinguish estoppel from reformation as legal theories. It is clear that in Kansas the insured may assume that an insurance policy will conform to the application. The insured may rely on this assumption, and is under no duty to read the policy to see whether it does in fact conform. Stamps v. Consolidated Underwriters, 205 Kan. 187, 468 P.2d 84; German American Ins. Co. v. Darrin, 80 Kan. 578, 103 P. 87. The purpose of allowing such relief is to make the insurance policy reflect the expectations of the insureds when they executed the application. The insured in a contract of insurance under this Kansas doctrine is thus protected when the contract does not conform to their intentions, expressed in the application, whatever the reason. Policies of insurance may be reformed under proper circumstances to correct defects which prevent the expression of the intent of the parties. Gilbert v. Mutual Ben. Health & Accident Ass'n, 172 Kan. 586, 241 P.2d 768.

■ Implicit in the Luster's right under Kansas case law to have the insurance policy conform to their application is the lack of knowledge of any differences between the application and the policy as issued. The right to reformation may be lost through passage of time after a defect or mistake is discovered. The leading case in Kansas on reformation of insurance policies to conform to the application makes it clear that an element of the remedy is that the insured be unaware of the variance between policy and application. In Stamps v. Consolidated Underwriters, 205 Kan. 187, 468 P.2d 84, the Kansas Supreme Court said:

"We agree with the trial court that under the facts and circumstances shown, Consolidated after accepting the application and then issuing a policy providing substantially less than full family coverage, without advising the applicant, is estopped from asserting that the policy cannot be reformed to provide the full coverage applied for."

■ Mrs. Luster demonstrated by her inquiries of the local agent that she knew of the changes prior to the accident, and that a premium was necessary to continue the coverage. She had sufficient time to act on this discovery. She reacted to receipt of the notice, and was informed as to what was necessary. By her failure to act with this knowledge, the Kansas doctrine expressed in the cited cases did not come into play to conform the policy to the application. Instead, *see* Shepard v. United States Fidelity & Guaranty Co., 210 Kan. 652, 504 P.2d 228. The policy was for a six-month period as to public liability coverage, but there remains a question as to what six months was covered.

### The Period of Coverage:

The application was executed May 17, 1968, and premium for one year, as computed by the local agent, was forwarded. The amount of the premium was later recomputed and a portion refunded, as stated above, but there is no question that at least a six-months' premium was paid on May 17th. State Farm asserts strongly that the policy was for six months. A binder for thirty days was issued on May 17, 1968, to provide temporary insurance until the application would be accepted or rejected. The binder stated that: "This binder shall in no event be in force more than 30 days from date written and shall be superseded by the policy." Thus, the passage of time, the issuance of a policy, or the rejection of the application within the thirty-day period after May 17th would have terminated the binder. It was contemplated that the policy when issued would include this period of coverage. However, the policy in this case was not issued to the Lusters until two months after the application was tendered. This was a month after the binder had expired, and by the terms of the binder the

Lusters were not insured during the month which elapsed between the end of the term of the binder and the issuance of the policy. Language identical to that quoted above from the binder was held to mean exactly what it said, that coverage under the binder extended for only thirty days, in Spangler v. State Farm Fire & Casualty Co., 221 Tenn. 37, 424 S.W.2d 191. Also, as a general principle, the Kansas court in Jameson v. Farmers Mutual Automobile Ins. Co., 181 Kan. 120, 309 P.2d 394, said: ". . . [T]he words of a contract of insurance if clear and unambiguous are to be taken and understood in their plain, ordinary and popular sense." *See also* Service v. Pyramid Life Ins. Co., 201 Kan. 196, 440 P.2d 944.

█ Since there was no coverage for the month between the time the binder expired and the policy issued, the Lusters received only five months of coverage between May 17, 1968, and November 17, 1968, when State Farm asserted the policy expired. The premium paid was for six months, so that they were entitled to six months of coverage, thus extending the policy to December 17, 1968. It has been held by the Kansas courts in Service v. Pyramid Life Ins. Co., cited above, that it is against public policy to accept premiums for a period when no insurance coverage is provided. This proposition was advanced by the plaintiffs on their motion for summary judgment and, of course, on this appeal.. The trial court did not reach the matter in its disposition of the case on the fraud theory. As indicated above, we must hold that the Kansas doctrine was not applicable; however, we hold that there was coverage under the somewhat different doctrine outlined above. Since there is no question that the Lusters were entitled to six months of coverage, and there is no doubt that there was no coverage for a month after the binder expired and this month elapsed before the policy was issued, there is no other possibility open for the computation of the six-month period. State Farm could not cover the month which had already passed without coverage as it could the

binder period. Ordinarily this would be a matter which we would remand to the trial court for further consideration, but in view of the fact the proposition was presented and in view of the fact there is really no other alternative, we hold that the six-month coverage extended into the month of December 1968.

*Failure to Defend or to Settle:*

State Farm denied coverage and refused to defend the suits against the Lusters despite several demands to do so. Also State Farm refused offers from the Rider estates to settle the suits within the policy limits. The face amount of the policy was twenty thousand dollars, and the judgments recovered against the estate of Edward Luster, Jr. are indicated above. The insurance company never at any time undertook a defense, did not seek to defend under a reservation of rights, nor bring any action to have its coverage judicially determined.

Since the accident was within the term of the policy, there is no other "coverage" problem. Thus we must consider, as did the trial court, what standard State Farm must be held to under Kansas law as to its decision not to defend the Lusters and secondly in not accepting an offer to settle the actions within the policy limits. There are several Kansas cases on each matter separately.

In Bennett v. Conrady, 180 Kan. 485, 305 P.2d 823, the Kansas court considered the duty of the carrier to defend, and said that liability arises if it negligently refuses to conduct the defense of its insured. This liability extends, the court said by way of dicta, to the full amount of the "resulting loss" even if that amount exceeds the limits of the policy. The court also mentions the relationship of the parties to the insurance contract once "negotiations" to settle have begun. In Spruill Motors, Inc. v. Universal Underwriters Ins. Co., 212 Kan. 681, 512 P.2d 403, the court considered a refusal to defend what the carrier took to be an action for an intentional tort, an assault. It said that the carrier must look beyond the pleadings

in the suit against the insured, and determine whether a "possibility of coverage" exists. The court said: "This possibility may be remote, but if it exists the company owes the insured a defense." It stated that the company must make a good faith analysis of information ascertainable by inquiry or investigation. The Kansas court in the cited case said:

". . . [A]n insurer must look beyond the effect of the pleadings and must consider any facts brought to its attention or any facts which it could reasonably discover in determining whether it has a duty to defend. If those facts give rise to a 'potential of liability' under the policy, the insurer bears a duty to defend."

■ The decision not to defend by State Farm must be measured by the above standards. This decision not to defend, from what the record indicates, was made by reference to the dates appearing in the company records and on the policy. There is no question of interpretation of definitions of coverage as in the typical case. The record thus shows that State Farm stood on those dates appearing in the records. It made no investigation of the facts surrounding the application for the policy, nor the relationship of the term of the binder to the policy as issued, nor the absence of any explanation to the Lusters for the change in period of liability coverage from that in the application, nor any other facts which had a bearing on the "possibility of coverage" or the "potential of liability" prescribed in Spruill v. Universal considered above. Since no investigation was made, State Farm must be bound by the facts that would have been disclosed as recounted above. Under these facts, there clearly was a "possibility of coverage," and the refusal was wrongful as a matter of law. The granting of the motion for summary judgment was proper as to this point.

The second step requires consideration of the issue of failure to settle within the policy limits as an independent problem. Again the Kansas courts have set the standards to here measure the con-

duct of State Farm. Of course, Bollinger v. Nuss, 202 Kan. 326, 449 P.2d 502, has direct application here in its absence of negligence and good faith requirements.

The Kansas Supreme Court in Bollinger v. Nuss, 202 Kan. 326, 449 P.2d 502, considered the several elements used to measure the duty of an insurance company to consider offers to settle suits against their insureds for amounts within the policy limits. In the situation there considered, the insured was advised that the carrier would defend the suit, but that the insured could hire an attorney to defend the excess. The insured decided not to be represented separately, and was fully advised of the consequences of a judgment exceeding the policy limits. The court held that the carrier must exercise both good faith and due care, when it has undertaken the defense, to settle within the policy limits. The court noted that when the defense is undertaken, the insured "surrenders" many rights or decisions to the insurer. The court further laid down the rule that the company must give consideration to the insured's interests in rejecting offers to settle within the policy limits, and that this consideration must be equal to that given by the company to its own interests. The opinion refers to the matter of good faith and due care as fact questions, but these were there tried to the court in the garnishment proceedings.

■ In the case before us, there was no evaluation of the question of the liability of the named insured nor of the amount of the possible recovery for the several deaths. As indicated above, one of the offers to settle within the policy limits was made after a judgment against the insured had been entered for some sixty thousand dollars. The record makes it clear that there was no real issue as to the liability of Mr. Luster, and the several deaths made it apparent that the damages would be large. As indicated, the company made no evaluation of the lawsuits to give consideration

to the insureds' position or even its own. The defendant in its brief states:

"First of all, plaintiffs assert that the obvious liability of the insured and the severity of the plaintiffs' injuries in the instant case demonstrate bad faith and negligence on the part of the defendant. However, these factors are obviously irrelevant since the defendant throughout this litigation has refused to defend or to settle on the basis that there existed no coverage on behalf of the insured. Accordingly, the strength of the injured claimant's case on the issues of liability and damages has no relevancy to the instant matter since the defendant never refused to defend or settle on the basis that the injured claimants were not entitled to recovery against the Estate of Edward Luster, Jr., nor on the basis that the nature and extent of their injuries did not exceed the policy limits."

The trial court properly held as a matter of law that State Farm was liable for recovery in excess of the policy limits by its failure to settle within the limits.

The failure to defend and the failure to settle within the policy limits must be separately considered as was done by the trial court. There are no Kansas decisions on the combination, and the total must be ascertained from the two parts. Also, as the trial court pointed out, the second portion, the failure to settle, must be evaluated because as it said:

"It would be incongruous to allow the insured the windfall of a right to recover amounts in excess of his policy limits from his insurer where the insurer wrongfully refused to defend and where even if it had defended there would have been nothing it could have done to relieve the insured of his excess liability. That is, in the absence of a showing that there was something the insurance company could have and should have done that would have relieved the insured of his excess liability, the negligence or bad faith of the insurance company in refusing to defend would have no causal connection to the insured's losses in excess of the policy limits. In each of the cases the court has examined where an insurance company's liability was extended beyond the limits of the policy, the reason and justification was found in the insurance company's refusal to accept a reasonable offer of settlement. That is because it is the act of the insurance company in rejecting the offer which is the direct cause of the insured's excessive liability."

Thus we must hold that the trial court's determination that summary judgment was appropriate was correct, and also that the conclusion and judgment entered were correct.

Affirmed.