**SMITH & CHAMBERS SALVAGE, a Washington General Partnership, Plaintiff,**

v.

**INSURANCE MANAGEMENT CORP.; Lumbermens Mutual Casualty Co.; and Fidelity & Casualty Co. of New York, Defendants.**

No. CY–91–3055–AAM.

United States District Court, E.D. Washington.

May 11, 1992.

James M. Danielson, Jeffers, Danielson, Sonn & Aylward, P.S., Wenatchee, WA, for plaintiff.

A. Richard Dykstra, Stafford, Frey, Cooper & Stewart, Seattle, WA, for defendant Insurance Management Corp.

Pinckney M. Rohrback, Keller, Rohrback, Seattle, WA, for defendant Lumbermens Mut. Cas. Co.

Gregory D. Fuller, Seattle, WA, for defendant Fidelity & Cas. Co. of New York.

## ORDER RE: SUMMARY JUDGMENT

McDONALD, District Judge.

This is a civil action for declaratory relief to determine coverage under two insurance policies. All parties have moved for summary judgment on the issue of liability (Ct.Rec. 9, 16, 21, 35).

### BACKGROUND

The action was commenced by the insured in the Superior Court of the State of Washington and was subsequently removed by the defendant Insurance Management Corporation (IMC) to this court pursuant to 28 U.S.C. § 1441, *et seq.* The remaining defendants, Lumbermens Mutual Casualty Company (Lumbermens) and Fidelity & Casualty Company of New York (Fidelity), consented to the removal of the action to the United States District Court for the Eastern District of Washington (Ct. Rec. 2).

The plaintiff Smith & Chambers Salvage is a Washington general partnership engaged in the commercial salvage business throughout the United States. In 1989, the plaintiff contacted IMC, an insurance broker, to procure workers' compensation coverage for plaintiff's employees throughout the United States. IMC prepared applications for such coverage and forwarded the same to the workers' compensation as-

signed risk pools [1] for the states of Kansas and Texas.

The Kansas application, under the section "Calculation of Estimated Annual Premium," listed Kansas, Nebraska, Missouri, and Illinois as locations wherein employees were stationed. A separate estimated premium was listed for each of the four states. The words "INCLUDE ALL STATES ENDORSEMENT" was typed under the four listed duty stations. However, the record is unclear as to whether the premium was calculated based on this inclusion. This application was sent to the Kansas Assigned Risk Pool.

The Kansas Assigned Risk Pool assigned co-defendant Fidelity to issue the requested policy. The actual policy issued by Fidelity provided workers compensation insurance for Kansas, Nebraska, Missouri and Illinois. The policy contained an "other states insurance clause" [2] but specifically excluded other states insurance coverage for Oklahoma and fifteen other states. The effective period of the policy was June 16, 1989 to June 16, 1990.

The application submitted to the Texas Assigned Risk Pool requested coverage for Workers' Compensation Insurance in Texas. Paragraph 7b of the application stated, "NO COVERAGE WILL BE PROVIDED FOR EXPOSURES IN OTHER STATES, UNLESS THE ASSIGNED RISK POOL—SPECIAL ALL STATES ENDORSEMENT—TEXAS IS ATTACHED TO THE POLICY AND THEN ONLY FOR INCIDENTAL EXPOSURES." The applicant marked the box indicating that the "Special All States Endorsement" was *not* requested. The Texas Workers Compensation Assigned Risk Pool assigned Lumbermens to issue a policy in accordance with the Texas application. Lumbermens issued Workman's Compensation and Employer's Liability Insurance Policy No. 3CL 934887–00. The policy was to take effect on June 21, 1989, and continue through June 21, 1990. This policy explicitly stated that it applied only to the workers' compensation law and occupational disease law of the state of Texas.[3] The policy was renewed for a second policy term from June 21, 1990 to June 21, 1991.

During 1990, Smith & Chambers entered into a contract to scrap railroad cars located in Fort Worth, Texas. Plaintiff hired a subcontractor, Collins Cutting (Collins) of Irving, Texas, to perform the work. Col-

1. An assigned risk pool is comprised of private insurance companies that subscribe to a state insurance plan. The state insurance plan provides those employers who are unable to secure coverage in the voluntary market with a means of insuring their operations through a designated carrier. Thus, the plan provides the employers with a means of securing the coverage required under the state workers compensation act. The insurance companies are bound by the rules of the plan as it is approved by the state insurance regulatory authorities and must operate in accordance with those rules.

The Kansas Assigned Risk Pool is managed by the National Council on Compensation Insurance (NCCI). The Texas Workers Compensation Assigned Risk Pool is managed by an independent state bureau.

2. "Other states insurance" coverage is designed for unknown and unanticipated temporary and incidental exposure in states or territories other than those designated in the policy, unless specifically excluded. (Ct.Rec. 34, Ex. D, p. 7). The policy explains that Fidelity will cover the insured if it begins work in any of those states covered by the "other states insurance" provision, provided that such work is not otherwise insured.

3. Paragraph E of the General Section of the Lumbermens policy states:

This policy covers all of your workplaces listed in items 1 or 4 of the Information Page; and it covers all other workplaces in item 3.A. states unless you have other insurance or are self-insured for such workplaces.

Item 3.A. of the policy's information page states as follows:

PART ONE OF THIS POLICY APPLIES TO THE WORKERS COMPENSATION LAW AND ANY OCCUPATIONAL DISEASE LAW OF EACH OF THE FOLLOWING STATES—TX.

Under Part One, Lumbermens agreed to pay promptly when due the benefits required of Smith & Chambers by the workers' compensation law and to defend at Lumbermens' expense any claim, proceeding or suit against Smith & Chambers for benefits payable by this insurance. "Workers compensation law" is defined in the General Section of the policy as "the workers or workmen's compensation law and occupational disease law of each state or territory named in item 3.A. of the information page"—i.e., Texas Workers Compensation Law. The policy disclaimed any duty on the part of Lumbermens to defend a claim, proceeding or suit that is not covered by this insurance.

lins employed Steve Hunt, an Oklahoma resident, to work on the Fort Worth job as a cutting torch operator.

On April 22, 1990, Mr. Hunt was injured while working at the Texas work site. On August 9, 1990, Mr. Hunt filed a claim for workers' compensation benefits against Collins in the Oklahoma Workers' Compensation Court. On November 2, 1990, the Oklahoma Workers' Compensation Court entered an order finding that Hunt's employment with Collins was subject to and covered by the provisions of the Oklahoma Workers' Compensation Act and directing Collins to pay Mr. Hunt disability compensation and medical benefits. Because Collins did not have insurance, Hunt continued to pursue proceedings in the Oklahoma court to establish secondary liability on Smith & Chambers.[4]

Smith & Chambers tendered the defense of the Oklahoma workers' compensation claim to defendant Lumbermens on February 12, 1991, and again on February 19, 1991. Lumbermens rejected the tender on February 22, 1991.

Smith & Chambers then tendered the defense to defendant Fidelity on February 28, 1991. That tender was rejected by Fidelity on March 8, 1991. On that same day, March 8, 1991, Smith & Chambers tendered the defense of the claim to IMC. IMC rejected the tender on March 29, 1991.

On June 27, 1991, Smith & Chambers filed its Complaint for Declaratory Judgment and Damages in the Superior Court of the State of Washington. The plaintiff seeks a judgment declaring that Lumbermens and Fidelity have a duty to defend and pay the claim arising out of the accident at Fort Worth, Texas, which claim has been prosecuted in Oklahoma under Oklahoma workers' compensation law. Plaintiff also seeks damages for the wrongful rejection of the tender of defense. Alternatively, the plaintiff seeks a judgment against IMC for all of plaintiff's damages arising out of IMC's failure to procure the proper insurance coverage.

The case was removed to this court on July 12, 1991. On January 22, 1992, the Oklahoma Workers' Compensation Court entered an order holding plaintiff secondarily liable to Mr. Hunt for benefits awarded.

## DISCUSSION

### I.

■ Because subject matter jurisdiction is based on diversity of citizenship, this court must first determine the applicable state substantive law. *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). A federal court sitting in diversity must apply the choice-of-law principles of the forum state. *Federal Ins. Co. v. Scarsella Bros., Inc.*, 931 F.2d 599 (9th Cir.1991); *Martinez v. Asarco, Inc.*, 918 F.2d 1467, 1470 (9th Cir.1990).

■ Under Washington law, the parties' rights under a contract or an insurance policy are to be determined by the law of the state with the most significant contacts with the policy. *Dairyland Ins. Co. v. State Farm Mutual Auto. Ins. Co.*, 41 Wash.App. 26, 31, 701 P.2d 806 (1985).[5] Particular factors to be considered are 1) the place of contracting, 2) the place of negotiation of the policy, 3) the place of performance, 4) the location of the subject matter of the policy, and 5) the parties' domicile, place of incorporation and place of business. *Id.* at 31, 701 P.2d 806.

■ Here, the choice of law issue must be determined by looking at the plaintiff's

---

4. After hiring Collins as a subcontractor, Smith & Chambers became aware that Collins did not have insurance coverage for its employees. Smith & Chambers asserts in its complaint that it forwarded additional premiums to IMC to secure coverage for these individuals. However, the record is void of any evidence which would support this assertion.

5. The plaintiff incorrectly cites *Norm Advertising, Inc. v. Monroe Street Lumber Co.*, 25 Wash.2d 391, 171 P.2d 177 (1946), as stating the proper standard for choice of law issues in Washington. The standard set forth in *Norm* has been overruled by later case law. *See e.g., Johnson v. Spider Staging Corp.*, 87 Wash.2d 577, 555 P.2d 997 (1976); *Baffin Land Corp. v. Monticello Motor Inn, Inc.*, 70 Wash.2d 893, 425 P.2d 623 (1967).

relationship with each defendant. The plaintiff Smith & Chambers (the insured) is a resident of Washington, but conducts business throughout the United States. The plaintiff has an office in Kansas City, Missouri. The defendant IMC is a Missouri corporation with its principal place of business in Kansas City, Missouri. All communications between the plaintiff and IMC regarding the insurance procurement contract occurred in Kansas City, Missouri. Thus, the contract between plaintiff and IMC has the most significant relationship with Missouri and is therefore governed by Missouri law.

■ The defendant Lumbermens is an Illinois Corporation with its principal place of business in Long Grove, Illinois. The application giving rise to the Lumbermens policy was submitted to the assigned risk pool in Texas. The Lumbermens policy was issued by Lumbermens' office in Garland, Texas, pursuant to Texas' assigned risk selection process. The policy provided coverage for payments required under Texas workers compensation law and listed the plaintiff's Garland, Texas location as the sole additional work location. The accident giving rise to the worker's claim occurred at Fort Worth, Texas.

Based on the above contacts, Texas has the most significant relationship with the Lumbermens policy and Texas law will govern the interpretation and scope of that policy. Apparently, defendants IMC and Lumbermens both agree that Texas law should be applied to interpret the Lumbermens policy.

■ The defendant Fidelity is a New Hampshire corporation with its principal place of business in New York, New York. The application giving rise to the Fidelity policy was submitted to the Assigned Risk Pool in Kansas. The Fidelity policy was issued pursuant to the Kansas Workers Compensation Insurance Plan to cover employees in Kansas, Nebraska, Missouri, and Illinois. Over one half of the total premium paid was for coverage of the employees located in Kansas. Consequently, Kansas has the most significant relationship with the Fidelity policy and Kansas law shall govern its interpretation and scope.

## II.

■ The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir.1975), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399 (1975). Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Semegen v. Weidner*, 780 F.2d 727 (9th Cir.1986). Summary judgment is precluded if there exists a genuine dispute over a fact that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. at 2510. In other words, a party is entitled to summary judgment when the documentary evidence produced by the parties permits only one reasonable conclusion. *Id.* at 251, 106 S.Ct. at 2511.

■ The moving party has the initial burden to prove that no genuine issue of material fact exists. *Matsushita Elec. Industrial Co. v. Zenith Radio*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* The party opposing summary judgment must go beyond the pleadings to designate specific facts establishing a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986). "[T]he issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the

claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248–49, 106 S.Ct. at 2510 (quoting *First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)). In ruling on a motion for summary judgment, all inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

At the summary judgment stage the court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510. In resolving these issues, "the court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Service v. Pacific Elec. Contractors*, 809 F.2d 626, 631 (9th Cir.1987). *See also, Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252, 106 S.Ct. at 2512.

### III.

Rather than address the parties' motions separately, the court will look to each contract—the two insurance contracts and the insurance procurement contract between IMC and Smith & Chambers—and determine whether it is appropriate to enter summary judgment against any party at this stage of the proceedings.

1. *The Insurance Procurement Contract Between IMC and Smith & Chambers.*

In support of its motion for summary judgment against its broker, IMC, the plaintiff states, "The evidence in this case is clear and uncontroverted that neither Fidelity & Casualty Company nor IMC notified the plaintiff that the policy of insurance issued by Fidelity & Casualty was at variance with the application for insurance nor was any return ever made of the premium which had been calculated by IMC on

the basis of all states endorsement." (Ct. Rec. 19, p. 9). Attached to the plaintiff's memorandum as "Exhibit 3" is a copy of the letter IMC sent to the plaintiff, notifying the latter that IMC had forwarded the insurance applications to the assigned risk pools. The letter in pertinent part reads:

Enclosed please find copies of applications for your workers' compensation coverages. *The Kansas application will cover all states except Texas.* The Texas application is also attached. We have forwarded these along with the appropriate premiums necessary.

(Ct.Rec. 19, Ex. 3) (emphasis added).

■ The problem with the plaintiff's motion is twofold. First, the plaintiff has not provided the court with facts regarding the agreement between it and IMC. It is not evident from the letter quoted above whether IMC's duty ceased with the forwarding of the applications to the assigned risk pools or whether it had a duty to ensure that the policies actually issued were in accordance with the applications. Defendant IMC alleges that its duties terminated when it forwarded the applications to the assigned risk pools: "In this case, defendant Insurance Management simply did what it was requested to do: it forwarded Smith & Chambers' application for all states workers' compensation insurance coverage." (Ct.Rec. 27, p. 6). IMC further alleges that the insurance companies sent the policies directly to the plaintiff and that at no time following the issuance of the Fidelity policy did IMC ever represent to the plaintiff that the Fidelity policy covered Oklahoma or included an All States Endorsement (Ct.Rec. 26). As the record currently stands, the court is not in a position to determine the scope of IMC's duty under the contract or whether IMC's actions, or inaction, constituted a breach of that agreement.

The second problem with the motion is the plaintiff's failure to cite legal authority to support its claim against IMC. The only authority cited by the plaintiff is a Washington case which is not controlling on this issue. As discussed above, choice of law principles dictate that Missouri law should

govern the contract between the plaintiff and IMC. Accordingly, the plaintiff's motion for summary judgment against IMC is DENIED.

## 2. *The Fidelity Policy.*

With respect to the plaintiff's motion for summary judgment against Fidelity, the plaintiff contends that the Fidelity policy "covers a claim for Oklahoma Workers' Compensation benefits under Section 3C of the policy because Kansas Law clearly requires an insurance company to either issue a policy in accordance with the application submitted or specifically notify an insured of its refusal to provide the coverage requested in the application." (Ct.Rec. 19, p. 6).[6] Since the application upon which the Fidelity policy was issued contained a request to "INCLUDE ALL STATES ENDORSEMENT," the plaintiff argues that Fidelity had a duty either to issue a policy with this coverage or to notify the plaintiff of its failure to do so. Counsel for plaintiff states by affidavit that neither Fidelity nor IMC notified the plaintiff that a policy different than the application had been issued until after the Hunt incident occurred (Ct. Rec. 18). Thus, the plaintiff claims that the policy must be reformed to include "other states coverage" for all states, including Oklahoma.

 The plaintiff accurately cites Kansas law as supporting its proposition that an insurer is bound in accordance with the application if the insurer accepts the application and issues a policy providing substantially less than the coverage requested, without advising the applicant. *Stamps v. Consolidated Underwriters*, 205 Kan. 187, 468 P.2d 84 (1970). It is also correct that under Kansas law an insured is not obligated to read the policy and may assume that the policy conforms to the application. *Id.; Hammond v. Western Casualty & Guaranty Ins. Co.*, 100 Kan. 582, 165 P. 291 (1917). However, this does not resolve the issue involved here.

 First, the cases relied upon by the plaintiff involve private insurance carriers not bound by the rules of a state insurance plan. Defendant Fidelity states that it is subject to rules which exclude coverage in Oklahoma (Ct.Rec. 36, p. 4). Fidelity further states that the NCCI issued a letter dated June 21, 1989, which advised the insured that "Coverage is provided under the Worker's Compensation Law of Kansas and of such additional states as may be requested *if such coverages are agreed to by the insurance company and are in accordance with the Plan rules.*" Fidelity claims that this letter was mailed to the plaintiff with a copy sent to IMC. Fidelity also points to an addendum to the policy which expressly stated that the All States Endorsement excluded coverage for Oklahoma because it was not an eligible state in accordance with the plan rules (Ct.Rec. 34, Ex. D, p. 1). Based on these submissions, there exists a genuine issue as to whether the plaintiff received notice that the policy issued was not in accordance with the application.

Second, the plaintiff fails to explain what the parties contemplated by an "all states endorsement." It is possible to infer from the plaintiff's argument that the term is synonymous with "other states insurance." For instance, the plaintiff argues that if the policy was issued in accordance with the application, which requested all states endorsement, coverage would exist for Oklahoma Worker's Compensation benefits under Section 3C of the policy. Section 3C refers to "Other States Insurance" as described in Part Three of the policy.

Even assuming "all states endorsement" is synonymous with "other states insurance," it is not clear that plaintiff would be afforded any relief by reforming the policy to include Oklahoma under this section. As explained above, this coverage applies only if the insured *begins work* in a state in which it is not otherwise insured for such work. Since the plaintiff did not "begin work" in Oklahoma and the accident did not occur in Oklahoma, it is doubtful that

---

**6.** The court notes that plaintiff failed to submit with its motion a Statement of Material Facts as required by LR 56(a). The motion is supported by an affidavit listing exhibits upon which the plaintiff relies and by a memorandum with the cited exhibits attached thereto (Ct.Rec. 18, 19).

other states insurance coverage in Oklahoma would apply to this case. Here, the plaintiff began work in Texas, where it was insured under the Lumbermens policy. Thus, the other states insurance coverage would not come into play.

Third, there is a genuine issue of material fact concerning whether any premium was paid by the plaintiff for coverage in Oklahoma. Fidelity claims that no premium was charged to or paid by the plaintiff for an all states endorsement or any worker's compensation insurance for Oklahoma (Ct.Rec. 36, p. 3). Under the description of duty locations, the application reads "INCLUDE ALL STATES ENDORSEMENT," however, no premium amount is designated for that entry (Ct.Rec. 19, Ex. 2).

Because the plaintiff has not established that it is entitled to judgment against Fidelity as a matter of law, the plaintiff's motion for summary judgment, as it relates to Fidelity, is DENIED.

### 3. *The Lumbermens Policy.*

The plaintiff moves for summary judgment against Lumbermens but has neglected to make any legal argument whatsoever to support its motion. Defendants IMC and Fidelity also move for summary judgment against Lumbermens, requesting that Lumbermens be held liable to the same extent that it would have been liable had Mr. Hunt filed his claim in Texas. In response, Defendant Lumbermens moves the court for an order declaring that Lumbermens has no duty to defend or indemnify the plaintiff against any claims brought in Oklahoma by Mr. Hunt.

Lumbermens states that it is willing to accept the facts as set forth in the plaintiff's motion and supporting documents. Since no factual dispute exists with respect to the Lumbermens policy, a trial of this issue is unnecessary and liability under the Lumbermens policy is appropriately determined by the court as a matter of law.

Lumbermens maintains that, under item 3.A. of the policy's information page, it is only obligated to pay claims under the workers' compensation laws of Texas.[7] Thus, Lumbermens reasons that Smith & Chambers' right to indemnification under the Lumbermens policy was foreclosed by Hunt's choosing to file his claim in Oklahoma under Oklahoma law. (Ct.Rec. 12, p. 6). According to Lumbermens, the policy does not apply to the Oklahoma action or benefits granted under Oklahoma law. Lumbermens relies on *Consolidated Underwriters v. King*, 160 Tex. 18, 325 S.W.2d 127 (1959) and *Travelers Ins. Co. v. Industrial Accident Comm'n*, 240 Cal. App.2d 804, 50 Cal.Rptr. 114 (1966) in support of its position.

In *Consolidated Underwriters*, the coverage provision was nearly identical to that involved in the instant case, except that it applied to the Workmen's Compensation Law of Louisiana. The employer's principal place of operation was in Louisiana but the employee was killed while working in Texas. The employee's widow filed a claim in Texas, seeking application of the Worker's Compensation Law of Texas. The Supreme Court of Texas stated in dicta that the courts of Texas will not entertain jurisdiction to enforce rights arising under the Louisiana Employers' Liability Act and held that the widow could not recover under Texas Compensation Law provisions where the plain language of the policy expressly limited rights and remedies to those provided in Louisiana. *Consolidated*, 160 Tex. 18, 325 S.W.2d 127 (1959).

Although this court, sitting in diversity, is bound by Texas law, the *Consolidated* case is distinguishable from the present case and need not be followed here. In *Consolidated*, the employee's widow brought suit against the insurance carrier directly, seeking benefits under Texas compensation laws even though the policy was expressly limited to rights provided under the Louisiana Compensation Law. Here,

---

**7.** During oral argument, counsel for Lumbermens conceded that Lumbermens would have been liable for reimbursing Smith & Chambers for workers' compensation benefits paid to Mr. Hunt as a result of the injuries he sustained while working in Texas, if the claim had been prosecuted in Texas.

the injured employee sued the employer in Oklahoma under Oklahoma law as he was entitled to do.[8] The employer is seeking indemnity from the insurer, not under Oklahoma law but under Texas law as provided by the terms of the policy. The question is whether the insurer can be held liable to the extent it would have been if the employee had filed his claim against the employer in Texas.

The most important distinction between *Consolidated* and the case sub judice is the fact that the employer in *Consolidated* was not a subscriber under the Workmen's Compensation Law of Texas. The Texas court emphasized the voluntary nature of the Texas workers' compensation scheme and refused to import the provisions of the Texas law into a contract entered into under the laws of another state by an employer who was not a voluntary subscriber in Texas. 325 S.W.2d at 130.

> As to such an employer our law would thus be made compulsory. That result would be contrary to both the spirit and the language of the statutes. It would be an incongruous construction of the statutes to hold that a Texas employer may elect to leave all of his employees uninsured ... or that he may elect to insure the employees in one of his businesses and leave uninsured his employees in another business ..., but that a foreign employer insuring his Texas employees under the law of the state of his residence must also insure them under the law of Texas.

*Id.* The Texas court stated, however, that the provisions of Texas Workmen's Compensation Law would be imported into a contract insuring the employees of a Texas subscriber. *Id.* An employer becomes a Texas subscriber by becoming a holder of a policy in an insurance company lawfully transacting a liability or accident business in Texas which is conditioned to pay compensation under the Texas Workmen's

Compensation Law or by becoming a subscriber of the statutorily created Texas Employers' Insurance Association. Since Smith & Chambers became a subscriber when it procured the Lumbermens policy, the principles enunciated in *Consolidated* would not be offended by finding Lumbermens liable to indemnify Smith & Chambers to the extent permitted under Texas law.

In *Travelers*, the employment contract was executed in California. The employee sustained injuries in Alaska while working in the course of his employment. The employee filed a claim for workers' compensation against his employer and Travelers in California. The *Travelers* policy applied only to the workers' compensation laws of Alaska. The California District Court of Appeals held that "where a policy covers liability exclusively for injury under the workmen's compensation law of one state, the insurer cannot be held liable in proceedings instituted under the workmen's compensation law of another forum." *Travelers*, 50 Cal.Rptr. at 118–19. Although the opinion in *Travelers* undoubtedly supports Lumbermens' position, the California court's opinion is not binding precedent in this case.

Both *Consolidated* and *Travelers* have been heavily criticized by other courts and commentators.[9] *Sieman v. Postorino Sandblasting and Painting Company,* 111 Mich.App. 710, 314 N.W.2d 736 (1981); *American Mutual Ins. Co. v. Duvall,* 117 N.H. 221, 372 A.2d 263 (1977); *Toebe v. Employers Mutual of Wausau,* 114 N.J.Super. 39, 274 A.2d 820 (1971); *Kacur v. Employers Mutual Casualty Company,* 253 Md. 500, 254 A.2d 156 (1969); *Weinberg v. State Workmen's Ins. Fund,* 368 Pa. 76, 81 A.2d 906 (1951); 2 Larson, *Workmen's Compensation Law* 464 (1968 Supp.). These courts follow the approach suggested in *Weinberg,* i.e., the insurer is

---

**8.** A worker who enters into a contract of employment in a state in which a Worker's Compensation Act is in effect can recover under the Act in that state for an injury sustained in the course of his employment, even though the harm was suffered in another state. *Weinberg*

*v. State Workmen's Ins. Fund,* 368 Pa. 76, 81 A.2d 906 (1951); Restatement Conflict of Laws, § 398.

**9.** Indeed, no other court has followed the holding in *Travelers* in the past twenty-five years.

held liable to the extent it would have been had the employee initially sought relief in the state covered by the policy.

In *Weinberg*, the plaintiffs operated a children's summer camp in Pennsylvania and their workmen's compensation policy was limited to Pennsylvania's compensation law. An employee, who was a resident of New Jersey and had entered into the employment contract in that state, sustained injuries while working at the campsite in Pennsylvania. The injured employee recovered a judgment in New Jersey. Pennsylvania's State Workmen's Insurance Fund refused to defend the proceedings in New Jersey or to reimburse plaintiffs for the compensation payments made to the employee. Rejecting the reasoning of *Travelers* and *Consolidated*, the Pennsylvania Supreme Court held that the State Workmen's Insurance Fund was bound to reimburse the employer to the extent of the employer's liability to the injured employee under Pennsylvania compensation laws.

> We do not think it can be fairly inferred from the terms of the policy, or that the parties thereto could have contemplated, that the Fund assumed the obligation to save plaintiffs harmless only in case the injured employe instituted proceedings to recover compensation in Pennsylvania and not if, for some purpose of her own, she chose to proceed against plaintiffs in some other jurisdiction. Had such limitation of the Fund's obligation under the policy been intended by the parties it could and should have been expressly inserted therein. The general rule is that where there is any question as to the proper construction of the terms of an insurance policy and the extent of the coverage intended thereby the doubt must be resolved in favor of the insured....

*Weinberg*, 81 A.2d at 909.

Similarly, the Court of Appeals for Maryland criticized the decisions in *Travelers* and *Consolidated* for failing to analyze the liability incurred by the insurance carrier under the terms of its contract with the employer and instead "seizing upon what appears to be the literal language of the coverage provisions of the contract, concerning which law may be applicable to benefits...." *Kacur*, 254 A.2d at 160. In *Kacur*, the employer was a resident of Maryland but operated a business in Pennsylvania. The employer entered into a contract of insurance whereby the insurer agreed to insure him for liability imposed upon him by the Workmen's Compensation Act of Pennsylvania and to defend any proceeding against him seeking workmen's compensation benefits. His employee was injured in Maryland during the course of his employment. The employee filed a claim with the Maryland Workmen's Compensation Commission. The insurer denied coverage under the terms of the policy.

Persuaded by *Weinberg*, the Maryland Court of Appeals ordered the entry of a declaratory decree in favor of the employer, whereby he was to be reimbursed by the insurer to the extent that the insurer would have been liable under the Workmen's Compensation Laws of the State of Pennsylvania. *Id.* 254 A.2d at 161–62.

This court is convinced that the better view is that expressed in *Weinberg* and *Kacur*. Certainly, the employer contemplates coverage for his employee's injuries sustained at the worksite covered by the policy. To interpret the contract so as to make coverage dependent upon the employee's choice of forums is absurd. The insurer is not prejudiced by imposing liability to the extent contemplated under the worker's compensation law named in the policy. *Toebe v. Employers Mutual of Wausau*, 114 N.J.Super 39, 274 A.2d 820 (1971). If the insurer desired, it could have written into the policy an express exclusion of coverage under the law of Texas for cases where an employee proceeds in a compensation system outside of Texas. Any ambiguity in a policy drafted by the insurer must be construed in favor of the insured to uphold coverage. The insurer has a duty to clearly express any policy limitations before they will be given full effect.

Accordingly, summary judgment shall be entered against Lumbermens on the issue of liability. Lumbermens is liable for that

portion of the benefits awarded to Mr. Hunt under Oklahoma law as would be payable under Texas compensation law.

## CONCLUSION

IT IS HEREBY ORDERED:

1. Defendant Lumbermens motion for summary judgment against the plaintiff (Ct.Rec. 9) is DENIED.

2. The plaintiff's motion for summary judgment against Defendant IMC (Ct.Rec. 16) is DENIED.

3. The plaintiff's motion for summary judgment against Defendant Fidelity (Ct. Rec. 16) is DENIED.

4. Defendant IMC's motion for summary judgment against Lumbermens (Ct. Rec. 21), in which Defendant Fidelity joins (Ct.Rec. 35), and the plaintiff's motion for summary judgment against Lumbermens (Ct.Rec. 16) are GRANTED. This matter shall proceed to trial on June 9, 1992, at 9:30 a.m., in Yakima, Washington, to determine the amount of the award Mr. Hunt would have recovered for his injuries under the Texas compensation scheme.

IT IS SO ORDERED.